# EXHIBIT 8

# COPY

| 1. Shipper    Insert Name Address and Phone/Fax | Booking No. | Bill of Lading No. |
|---|---|---|
| LET(HK) LIMITED | | COSU6030603280 |
| | **Export References** | |
| | SHE11328 | |

| 2. Consignee    Insert Name Address and Phone/Fax | Forwarding Agent and References FMC/CHB No. |
|---|---|
| PHILIPS & LITE-ON DIGITAL SOLUTIONS CORP 42000 CHRISTY STREET, FREMONT CA 94539,USA TEL:(510)687-1800 FAX:(510)687-1900 | Point and Country of Origin |

| 3. Notify Party    Insert Name Address and Phone/Fax    (It is agreed that no responsibility shall attach to the Carrier or his agents for failure to notify) | Also Notify Party-routing & Instructions |
|---|---|
| ULTRA AIR CARGO INC. 20900 NORMANDIE AVE.,UNIT B, TORRANCE, CA 90502 TEL:(310) 961 9060 FAX:(310) 961 9015 | |

| 4. Combined Transport*    Pre-Carriage by | 5. Combined Transport*    Place of Receipt | |
|---|---|---|
| | BEIHAI,CHINA | |

| 6. Ocean Vessel Voy. No. | 7. Port of Loading | Service Contract No. | Commodity Code |
|---|---|---|---|
| HUI JIN QIAO 181 008S | BEIHAI,CHINA | SHE11328 | |

| 8. Port of Discharge | 9. Combined Transport*    Place of Delivery | Type of Movement | |
|---|---|---|---|
| NEW YORK,NY | BUFFALO,NY | FCL / FCL | CY-DR |

| Marks & Nos. Container / Seal No. | No. of Container or Packages | Description of Goods (If Dangerous Goods, See Clause 20) | Gross Weight | Measurement |
|---|---|---|---|---|
| CBHU1842324 / W93005 / | / | 802 CARTONS    /FCL / FCL    /40GP/ | | |
| LUII (IN DIA) DRIVERS S/N.NO.:SIN1000 031 42/3139/3140/22 00/ 2632/2833/3156/ 3158 P/NO.:1-3/1-1/1 -4/ 1-4/1-1/1-2/1-4 /1-2 MADE IN CHINA P.R.C | 802 CARTONS | OPTICAL DRIVES(HTS #8471.70.6000) THIS SHIPMENT CONTAINS NO REGULATED WOOD PACKING MATERIALS. | 7304.590KGS | 39.2100CBM |
| | | ** TO BE CONTINUED ON ATTACHED LIST  ** | | |

| Declared Cargo Value US$ | Description of Contents for Shipper's Use Only (Not part of This B/L Contract) |
|---|---|
| **10. Total Number of Containers and/or Packages (in words) Subject to Clause 7 Limitation** | SAY  ONE CONTAINER TOTAL |

| 11.    Freight & Charges | Revenue Tons | Rate | Per | Amount | Prepaid | Collect | Freight & Charges Payable at / by |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

EXHIBIT
Abella 8
Feb 6, 2013
B.S.

Received in external apparent good order and condition except as otherwise noted. The total number of the packages or units stuffed in the container, the description of the goods and the weights shown in this Bill of Lading are furnished by the merchants, and which the carrier has no reasonable means of checking and is not a part of this Bill of Lading contract. The carrier has issued ___3___ original Bills of Lading, all of this tenor and date, one of the original Bills of Lading must be surrendered and endorsed or signed against the delivery of the shipment and whereupon any other original Bills of Lading shall be void. The merchants agree to be bound by the terms and conditions of this Bill of Lading as if each had personally signed this Bill of Lading.
*Applicable Only When Document Used as a Combined Transport Bill of Lading.

| Date Laden on Board    23 MAY 2011 |
|---|
| Signed by: |

9805   Date of Issue   23 MAY 2011    Place of Issue BEIHAI

Signed for the Carrier, COSCO CONTAINER LINES CO., LTD.

| Marks & Nos.<br>Container / Seal No. | No. of Container<br>or Packages | Description Of Goods  (If Dangerous Goods, See Clause 20) | Gross Weight | Measurement |
|---|---|---|---|---|
| TOTAL: | 802<br>CARTONS | | 7304.590KGS | 39.2100CBM |
| ON CY-DR TERM<br>OCEAN FREIGHT PREPAID<br>SHIPPER'S LOAD, COUNT AND SEAL | | | | |

# Cosco Container Lines Bill of Lading (amended 24/8/2001)
# TERMS AND CONDITIONS

## 1. DEFINITIONS

"Carrier" means COSCO container lines company limited.

"Merchant" includes the consignor, the shipper, the receiver, the consignee, the owner of the Goods, the lawful holder or endorsee of this Bill of Lading, or any other person having any present or future interest in the Goods or this Bill of Lading, or anyone authorized to act on behalf of any of the foregoing.

"Vessel", where the context so admits, includes the Vessel named in Box 6 of this Bill of Lading or any substitute therefore, and any feeder vessel, lighter or barge used by or on behalf of the Carrier in connection with any seaborne leg of the carriage.

"Sub-contractor" includes owners and operators of vessels (other than the Carrier), stevedores, terminal, warehouse, depot and groupage operators, road and rail transport operators and any independent contractor employed by the Carrier in the performance of the carriage and any sub-sub-contractor thereof. The expression Sub-contractor shall include direct and indirect Sub-contractors and their respective servants, agents or Sub-contractors.

"Goods" means the whole or any part of the cargo received from the Merchant and includes any Container not supplied by or on behalf of the Carrier.

"Package" means each Container which is stuffed and sealed by or on behalf of the Merchant, and not the items packed in such Container if the number of such items is not indicated on the front of this Bill of Lading or is indicated by the terms such as "Said to Contain" or similar expressions.

"Shipping Unit" means any physical unit of cargo not shipped in a package, including machinery, vehicles and boats, except goods shipped in bulk.

"Container" includes any Container, open top, trailer, transportable tank, flat rack, platform, pallet, and any other equipment or device used for or in connection with the transportation of the Goods.

## 2. CARRIER'S TARIFF

The terms of the Carrier's applicable Tariff and other requirements regarding charges are incorporated into this Bill of Lading. Particular attention is drawn to the terms contained therein, including, but not limited to, free storage time, Container and vehicle demurrage, etc. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier or his agents upon request. In case of any inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

## 3. SUB-CONTRACTING, INDEMNITY AND CERTAIN DEFENSES, EXEMPTIONS AND LIMITATIONS

(1) The Carrier shall have the right at any time and on any terms whatsoever to sub-contract the whole or any part of the carriage with any Sub-contractor and/or to substitute any other vessel or means of transport for the Vessel.

(2) The Merchant undertakes that no claim or legal action whatsoever shall be made or brought against any person by whom the carriage is performed or undertaken (including, but not limited to, the Carrier's servants, agents or Sub-contractors), other than the Carrier, which imposes or attempts to impose upon any such person, or any vessel owned or operated by such person, any liability whatsoever in connection with the Goods or the carriage thereof whether or not arising out of negligence on the part of such person. Should any such claim or legal action nevertheless be made or brought, the Merchant undertakes to indemnify the Carrier against all consequences thereof including legal expenses on a full indemnity basis. Without prejudice to the foregoing, every such person or vessel, including, but not limited to, the Carrier's servants, agents, or Sub-contractors as defined in Clause 1 above, shall have the benefit of every exemption, defense and limitation herein contained applicable to the Carrier, in contract or in tort, as if such provision were expressly contracted for its benefit, and, in entering into this contract, the Carrier, to the extent of such exemptions, defenses and limitations, does so not only on its behalf, but also as an agent and trustee for such person or vessel.

## 4. CARRIER'S RESPONSIBILITY

**(1) Port to Port Shipment** If boxes 6, 7 and 8 but not boxes 4,5and 9 are filled in on the front of this Bill of Lading, this Bill of Lading is a Port-to-Port contract. The Carrier shall be responsible for the Goods as Carrier from the time when the Goods are received by the Carrier at the Port of Loading until the time of delivery thereof at the port of discharge to the Merchant or to the Authority as required by local laws or regulations, whichever occurs earlier.

**(2) Combined Transport** If Box 4, Box 5 and/or Box 9 are filled in on the front of this Bill of Lading and the place(s) or port(s) indicated therein is/are place(s) or port(s) other than that indicated in Box 7 and Box 8 and Freight is paid for combined transport, this Bill of Lading is a combined transport contract. The Carrier undertakes to arrange or procure the precarriage and/or on-carriage segments of the combined transport. All claims arising from the combined transport carriage must be filed with the Carrier within 9 months after the delivery of the Goods or the date when the Goods should have been delivered, failing which the Carrier shall be discharged from all liabilities whatsoever in respect of the Goods. If any payment is made by the Carrier to the Merchant in respect of any claim arising from the combined transport carriage, the Carrier shall be automatically subrogated to or given all rights of the Merchant against all others including pre-carrier or on-carrier or Sub-contractor on account of such loss or damage. Nothing herein contained shall be deemed a waiver of any rights that the Carrier may have against a pre-carrier or on-carrier or Sub-contractor for indemnity or otherwise.

**5. NOTICE OF CLAIM AND TIME BAR**

(1) Unless notice of loss or damage is given in writing to the Carrier's agent at the Port of Discharge or Place of Delivery before or on the date of delivery of the Goods, or if loss or damage is not apparent, within 15 consecutive days thereafter, such delivery shall be prima facie evidence of the delivery of the Goods by the Carrier and/or on-carrier in the order and condition described in this Bill of Lading.

(2) The Carrier, its servants, agents and Sub-contractors shall be discharged from all liabilities whatsoever unless suit is brought within one year after the delivery of the Goods or the date when the Goods should have been delivered.

**6. LOSS OR DAMAGE**

(1) The terms of this Bill of Lading shall at all times govern all responsibilities of the Carrier in connection with or arising out of the carriage of the Goods not only during the carriage, but also during the period prior to and/or subsequent to the carriage. The exemptions from liability, defenses and limitation of liability provided for herein or otherwise shall apply in any action against the Carrier for loss or damage or delay, howsoever occurring and whether the action be founded in contract or in tort and even if the loss, damage or delay arose as a result of unseaworthiness, negligence or fundamental breach of contract. Save as is otherwise provided herein, the Carrier shall in no circumstances whatsoever and howsoever arising be liable for direct or indirect or consequential loss or damage or loss of profits.

(2) The Carrier does not undertake that the Goods will be transported from or loaded at the place of receipt or loading or will arrive at the place of discharge, destination or transhipment aboard any particular vessel or other conveyance at any particular date or time or to meet any particular market or in time for any particular use. Scheduled or advertised departure and arrival times are only expected times and may be advanced or delayed if the Carrier shall find it necessary, prudent or convenient. The Carrier shall in no circumstances whatsoever and howsoever arising be liable for direct, indirect or consequential loss or damage caused by delay.

(3) If the stage of the combined transport during which loss or damage occurred can be determined, the liability of the Carrier shall be governed by the national law(s) and/or international convention(s) applicable thereto. If the stage of the combined transport during which loss or damage occurred cannot be determined, the Merchant and the Carrier agree that it shall be deemed that the loss or damage occurred aboard the Carrier's Vessel. In either case, clauses 5(2) and 7 shall apply.

**7. LIMITATION OF LIABILITY**

(1) Except as provided for in Clause 7(2), this Bill of Lading shall be subject to the provisions of the Maritime Code of the People's Republic of China as provided for in Clause 26(1). Neither the Carrier, its servants, agents, Sub-contractors nor the Vessel shall in any event be

liable for any loss or damage to the Goods in any amount exceeding the limits per package or unit prescribed by that Code, unless the nature and value of the Goods have been declared by the Merchant before shipment and inserted in this Bill of Lading (Box 10) and the Merchant has paid additional Freight on such declared value.

(2) Where carriage includes carriage to or from or through a port or place in the United States of America, this Bill of Lading shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936 (US COGSA) and any amendments thereto, as provided for in Clause 26(2) hereof. In such event, neither the Carriers nor its servants, agents, Subcontractors and/or the Vessel shall in any event be liable for any loss of or damage to the Goods in an amount exceeding the limits per package or unit prescribed by US COGSA, unless the nature and value of the Goods have been declared by the Merchant before shipment and inserted in this Bill of Lading (Box 10) and the Merchant has paid additional Freight on such declared value.

(3) If a legal regime other than the Maritime Code of the People's Republic of China or US COGSA is compulsorily applied to this Bill of Lading, the liability of the Carrier, if any, shall not exceed the limits per Package or Shipping Unit prescribed therein, unless the nature and value of the Goods have been declared by the Merchant and inserted in this Bill of Lading (Box 10) and the Merchant has paid additional Freight on such declared value.

(4) For the purpose of this Clause 7, the declared value shall be the basis for calculating the Carrier's liability, if any, provided that such declared value shall not be conclusive on the Carrier, and further provided that such declared value does not exceed the true value of the Goods at destination. Any partial loss or damage shall be adjusted pro-rata on the basis of such declared value.

**8. FIRE**

The Carrier shall not be liable for any loss of or damage to the Goods occurring at any time, including that before loading or after discharge by reason of any fire whatsoever, unless such fire is caused by the actual fault of the Carrier.

**9. CARRIER'S CONTAINERS**

(1) Goods received in break bulk will be stuffed by the Carrier in Containers and the Carrier shall have the right to carry any Containers, whether or not stuffed by the Carrier, on deck or below deck. All such Goods shall participate in General Average.

(2) If Carrier's Containers and equipment are used by the Merchant for pre-carriage or oncarriage or unpacked at the Merchant's premises, the Merchant is responsible for returning the empty Containers, with interiors brushed, clean and free of smell to the point or place designated by the Carrier, its servants or agents, within the time prescribed in the Tariff and/or required by the Carrier. Should a Container not be returned within the aforesaid time, the Merchant shall be liable for any detention, demurrage, loss or expenses which may arise from such non-return.

(3) The Merchant shall be liable for any loss of or damage to Carrier's Containers and other equipment while in the custody of the Merchant or anyone acting on the Merchant's behalf. The Merchant shall also be liable during such period for any loss of or damage to the property of others or for any injuries or death and the Merchant shall indemnify and hold the Carrier harmless against all damages, including legal expenses, incurred from any and all such claims arising during such periods.

**10. MERCHANT-STUFFED CONTAINER**

(1) If a Container has not been stuffed by or on behalf of the Carrier, the Carrier shall not be liable for loss of or damage to the Goods and the Merchant shall indemnify the Carrier against any loss, damage, liability or expense incurred by the Carrier if such loss, damage, liability or expense has been caused by:

(a) the manner in which the Container has been filled, packed, loaded or stuffed, or

(b) the unsuitability of the Goods for carriage in the Container, or

(c) the unsuitability or defective condition of the Container, provided that, if the Container had been supplied by or on behalf of the Carrier, this unsuitability or defective condition could have been apparent upon inspection by the Merchant at or prior to the time when the Container was filled, packed, loaded or stuffed.

(2) If a Merchant-stuffed Container is delivered by the Carrier with its seal intact, such delivery

shall constitute full and complete performance of the Carrier's obligations hereunder and the Carrier shall not be liable for any loss or shortage of the Goods ascertained at delivery.
(3) The Merchant shall inspect Containers before stuffing them and the use of a Container shall be prima facie evidence of its being suitable and without defect.

## 11. MERCHANT'S DESCRIPTION

(1) The Merchant's description of the Goods stuffed in a sealed Container by the Merchant, or on his behalf, shall not be binding on the Carrier, and the description declared by the Merchant on the front of this Bill of Lading is information provided by the Merchant solely for its own use including but not limited to the use of its freight forwarder. It is understood by the Merchant that the Carrier has not verified the contents, weight or measurement of a sealed container, and the Carrier makes no representation as to the contents of a sealed Container, van, crate or box hereunder, nor its weight or measurement, nor the value, quantity, quality, description, condition, marks or number of the contents thereof. The Carrier shall be under no responsibility whatsoever in respect of such description or particulars.
(2) If any particulars of any letter of credit and/or import license and/or sales contract and/or invoice or order number and/or details of any contract to which the Carrier is not a party are shown on the front of this Bill of Lading, such particulars are included solely at the request of the Merchant for its convenience. The Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value and shall in no way affect the Carrier's liability under this Bill of Lading. The Merchant acknowledges that, except as provided for in Clause 7 hereof, the value of the Goods is unknown to the Carrier.

## 12. MERCHANT'S RESPONSIBILITY

(1) The parties defined as "Merchant" in clause 1 hereof shall, where applicable, be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by any of them under this Bill of Lading.
(2) The Merchant warrants to the Carrier that the particulars relating to the Goods as set forth on the front of this Bill of Lading have been checked by the Merchant on receipt of this Bill of Lading and that such particulars, and any particulars furnished by or on behalf of the Merchant, are adequate and correct. The Merchant also warrants that the Goods are lawful Goods and are not contraband.
(3) The Merchant shall indemnify the Carrier against all liabilities, costs, losses, damages, fines, penalties, expenses or other sanctions of a monetary nature arising or resulting from any breach of the warranties in Clause 12(2) hereof or from any other cause in connection with the Goods for which the Carrier is not responsible.
(4) The Merchant shall comply with all regulations or requirements of customs, port and other Authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including the full return Freight for the Goods if returned, or if on-carried, the full Freight from the Port of Discharge or the Place of Delivery nominated herein to the amended Port of Discharge or the amended Place of Delivery) incurred and/or sustained by reason of any failure to so comply, or by reason of any illegal, incorrect or insufficient marking, numbering, or addressing of the Goods, and shall indemnify the Carrier in respect thereof.

## 13. FREIGHT AND CHARGES

(1) All Freight shall be deemed fully, finally and unconditionally earned on receipt of the Goods by the Carrier and shall be paid and non-returnable in any event whatsoever.
(2) All Freight and charges shall be paid without any set-off, counter-claim, deduction, or stay of execution before delivery of the Goods.
(3) The Merchant's attention is drawn to the stipulations concerning currency in which the Freight is to be paid, rate of exchange, devaluation and other contingencies concerning the Freight in the applicable Tariff or as agreed otherwise.
(4) If the Merchant's description of the Goods in this Bill of Lading or in any document or certificate furnished to the Carrier by or on behalf of the Merchant shall prove to have been inaccurate, incorrect or misleading in any respect, the Merchant shall pay for the actual damage suffered by the Carrier.
(5) Payment of Freight and charges to any freight forwarder or broker, or anyone other than the Carrier or its authorized agent, shall not be considered payment to the Carrier and shall be made at the Merchant's sole risk.

(6) The parties defined as Merchants in clause 1 hereof shall, where applicable, be jointly and severally liable to the Carrier for payment of all Freight, demurrage, General Average and charges, including, but not limited to, court costs, expenses and reasonable attorney's fees incurred in collecting sums due the Carrier, failing which shall be considered a default by the Merchant in the payment of Freight and charges.

## 14. INSPECTION OF THE GOODS

The Carrier and/or any person to whom the Carrier has sub-contracted the carriage or any person authorized by the Carrier shall be entitled, but under no obligation, to open any Container or Package at any time and to inspect the Goods. If by order of the Authorities at any place, a container must be opened for inspection, the Carrier shall not be liable for any loss or damage incurred as a result of any opening, unpacking, inspection or repacking. The Carrier shall be entitled to recover the cost of such opening, unpacking, inspection, and repacking from the Merchant.

## 15. CARRIAGE AFFECTED BY CONDITION OF THE GOODS

If it appears at anytime that the Goods cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measure(s) in relation to the Goods or the Container, the Carrier may without notice to the Merchant (but as its agent only) take any measure(s) and/or incur any additional expense to carry or to continue the carriage thereof, and/or dispose of the Goods, and/or abandon the carriage and/or store them ashore or afloat, under cover or in the open, at any place, whichever the Carrier in his absolute discretion considers most appropriate, which abandonment, storage or disposal thereof shall be deemed to constitute due delivery under this Bill of Lading. The Merchant shall indemnify the Carrier against any additional expense so incurred.

## 16. LIENS

The Carrier shall have a lien on the Goods and any documents relating thereto for Freight, dead Freight, demurrage, detention, and for any expenses incurred by the Carrier for recoopering, repacking, remarking, fumigation or required disposal of faulty Goods, for General Average contributions to whomsoever due, for fines, dues, tolls, land Freight, or commissions paid or advanced by the Carrier on behalf of the Goods, for any sums including salvage payable to the Carrier under this Bill of Lading and for legal expenses incurred because of any attachment or other legal proceedings brought against the Goods by governmental Authorities or any person claiming an interest in the Goods. The Carrier's lien shall survive discharge or delivery of the Goods and the Carrier shall have the right to enforce such lien by public auction or private sale in its discretion. Should the proceeds of sale fail to cover the amount due, including expenses incurred, the Carrier shall be entitled to recover the balance from the Merchant. Should such proceeds exceed the amount due, the balance shall be returned to the Merchant.

## 17. DECK CARGO, ANIMALS AND PLANTS

Goods (other than Goods stuffed in Containers) that are stated on the front of this Bill of Lading as contracted to be stowed "on deck" and are so carried, and all live animals, including fish and birds, or plants shipped hereunder, shall be carried solely at the risk of the Merchant, and the Carrier shall not be liable for any loss or damage of whatsoever nature arising during carriage by sea whether or not arising out of negligence on the part of the Carrier. The Carrier shall be bound to prove that he has fulfilled the special requirements of the Merchant with regard to the carriage of the live animals and that under the circumstances of the sea carriage, the loss or damage has occurred due to the special risks inherent therein. The Merchant shall indemnify the Carrier against all or any extra costs incurred for any reason whatsoever in connection with the carriage of such live animals or plants.

## 18. METHODS AND ROUTES OF CARRIAGE

The Carrier may at any time during the carriage
(1) use any means of transport or storage whatsoever;
(2) transfer the Goods from one conveyance to another including transhipment or carrying the same on another Vessel other than the Vessel named on the front of this Bill of Lading or by any other means of transport whatsoever.
Anything done in accordance with this Clause or any delay arising therefrom shall be deemed to be within the scope of the carriage and shall not be a deviation.

## 19. MATTERS AFFECTING PERFORMANCE

If at any time the carriage is or is likely in the judgment of the Master to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind, other than the inability of the Goods to be safely or properly carried or carried further, and howsoever arising (even though the circumstances giving rise to such matters as stated above existed at the time this contract was entered into or the Goods were received for shipment), the Carrier (whether or not the carriage is commenced) may, at his sole discretion and without prior notice to the Merchant:

(1) carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable, by an alternative route from that indicated in this Bill of Lading or from that which is customary for Goods consigned to that Port of Discharge or Place of Delivery. If the Carrier elects to invoke the terms of this sub-Clause, then, notwithstanding the provisions of Clause 18 hereof, the Carrier shall be entitled to charge such additional Freight as the Carrier may determine, or

(2) suspend the carriage of the Goods and store them ashore or afloat upon the terms of this Bill of Lading and endeavour to forward them as soon as possible, but the Carrier makes no representation as to the maximum period of suspension. If the Carrier elects to invoke the terms of this sub-Clause, then the Carrier shall be entitled to the payment of such additional Freight as the Carrier may determine, or

(3) abandon the carriage of the Goods and place the Goods at the Merchant's disposal at any port or place where the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall entirely cease. The Carrier shall nevertheless be entitled to full Freight on the Goods received for shipment, and the Merchant shall pay any additional costs of the carriage to, and delivery and storage at such port or place.

Where the Carrier elects to use an alternative route under Clause 19(1) or to suspend the carriage under Clause 19(2), same shall not prejudice its right subsequently to abandon the carriage.

## 20. DANGEROUS GOODS

At the time of shipment of Dangerous Goods, the Merchant shall, in compliance with the regulations governing the carriage of such Goods, have the same properly packed, distinctly marked and labelled and notify the Carrier in writing of their proper description, nature and the precautions to be taken. In case the Merchant fails to or inaccurately notifies the Carrier, the Carrier may have such Goods landed, destroyed or rendered innocuous when and where circumstances so require, without compensation. The Merchant shall be liable to the Carrier for any loss, damage or expense resulting from such shipment.

Notwithstanding the Carrier's knowledge of the nature of the Dangerous Goods and its consent to carry, the Carrier may still have such Goods landed, destroyed or rendered innocuous, without compensation, when they become an actual danger to the Vessel, the crew and other persons on board or to other goods. However, what mentioned in this Clause shall not prejudice the contribution in General Average, if any.

## 21. SPECIAL, REFRIGERATED OR HEATED CONTAINERS

(1) Unless the Merchant and the Carrier agree in writing before shipment that specially ventilated, refrigerated or heated Containers will be used to ship the Goods and such agreement is noted on the front of this Bill of Lading, and the Merchant gives proper written notice to the Carrier of the nature of the Goods and of the particular temperature range to be maintained and/or special attention required and the Merchant pays the extra Freight charged under the Carrier's Tariff or as agreed, the Goods shall be carried in ordinary unventilated Containers.

(2) In case of a refrigerated Container stuffed by or on behalf of the Merchant, the Merchant undertakes that its thermostatic, ventilating or any other controls have been correctly set by the Merchant and that the temperature of the Goods and the refrigerated Container has been brought to the required temperature level before stuffing and that the Goods have been properly stowed in the Container before the receipt thereof by the Carrier. If these requirements are not fully met, the Carrier shall not be liable for any loss of or damage to the Goods howsoever arising.

The Merchant shall be responsible for the operation and maintenance of the Carrier's Container while it is in the Merchant's custody or the custody of anyone acting on the

Merchant's behalf.

(3) If a suggested temperature is noted on the front of this Bill of Lading, the Merchant shall deliver the Goods to the Carrier at the noted temperature plus or minus 2°C permitted, and the Carrier shall exercise due diligence to maintain such temperature, plus or minus 2°C while the Goods are in its actual possession.

(4) The Carrier does not warrant that the Container be properly ventilated, refrigerated or heated throughout the carriage, nor shall the Carrier be liable for any loss of or damage to the Goods arising from any latent defects, any total or partial failure or breakdown, or stoppage of the refrigerating machinery, plant, insulation and/or any apparatus of the Container, Vessel, conveyance and any other facilities, provided that the Carrier shall before or at the beginning of the carriage exercise due diligence to maintain the refrigerated Container in an efficient state.

(5) In case of the Merchant's own Container, a set of emergency kit and an operation manual shall be supplied by the Merchant.

## 22. NOTIFICATION AND DELIVERY

(1) Any mention herein of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not give rise to any liability on the part of the Carrier or relieve the Merchant of any obligation hereunder.

(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff or as required by the Carrier.

(3) If the Merchant fails to take delivery of the Goods during a reasonable time or whenever in the opinion of the Carrier the Goods are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may, at its discretion, without prejudice to any rights which he may have against the Merchant, without notice and without any responsibility whatsoever attaching to him, unstuff, sell, destroy or dispose of the Goods at the sole risk and expense of the Merchant, and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant. The aforesaid unstuffing shall constitute due delivery hereunder and thereupon all liability whatsoever of the Carrier in respect of the Goods thereof shall cease.

(4) Where the Carrier is obliged to hand over the Goods so carried into the custody of the port, customs or any other Authorities at the Port of Discharge or Place of Delivery and the Goods are delivered by the same to the Merchant without necessity of production of this Bill of Lading by the Merchant as required by the local law, regulation and/or practice, such handover shall constitute due delivery to the Merchant under this Bill of Lading and there-upon the liability of the Carrier in respect of the Goods shall entirely cease.

(5) Refusal by the Merchant to take delivery of the Goods in accordance with the terms of this Clause, notwithstanding its having been notified of the availability of the Goods for delivery, shall constitute an irrevocable waiver by the Merchant to the Carrier of all and any claims whatsoever relating to the Goods or the Carriage. The Merchant shall be liable for any losses, damages, expenses and liabilities incurred and sustained by the Carrier arising from such refusal, including but not limited to, the return of the Goods to their place of origin.

## 23. GENERAL AVERAGE AND SALVAGE

(1) General Average shall be adjusted at any port or place at the Carrier's option according to the York-Antwerp Rules 1974, as amended in 1990, and any other amendments thereto. The Merchant shall give such cash deposit or other security as the Carrier may deem sufficient to cover the estimated General Average contribution of the Goods before delivery.

(2) In the event of the Master considering that salvage services are needed, the Merchant agrees that the Master shall act on its behalf to procure such services to Goods and that the Carrier may act on its behalf to settle salvage remuneration. The Merchant shall timely and fully provide cash deposit or other security to the salvor without affecting the schedule of the Vessel after the salvage, failing which the Merchant shall be liable for any losses arising therefrom and sustained by the Carrier.

## 24. BOTH-TO-BLAME COLLISION

The Both-to-blame Collision Clause currently published by the Baltic and International Maritime Conference is deemed to be incorporate into this Bill of Lading.

## 25. NON-VESSEL-OPERATING COMMON CARRIERS

If this Bill of Lading is accepted by a Merchant acting as a non-vessel-operating common carrier (NVOCC), who has in turn concluded other contracts of carriage with third parties, the NVOCC hereby warrants that the contracts concluded by him in respect of the Goods subject to this Bill of Lading shall incorporate the terms and conditions of this Bill of Lading. The NVOCC further warrants to indemnify the Carrier, its servants, agents and Sub-contractors against all consequences of his failure to do so.

## 26. LAW AND JURISDICTION

(1) This Bill of Lading is governed by the laws of the People's Republic of China. All disputes arising under or in connection with this Bill of Lading shall be determined by the laws of the People's Republic of China and any action against the Carrier shall be brought before the Shanghai Maritime Court or other maritime courts in the People's Republic of China, as the case may be.

(2) Notwithstanding the provision of Clause 26(1), where carriage includes carriage to or from or through a port or place in the United States of America, this Bill of Lading shall be subject to the provisions of the US COGSA, which shall be deemed to have been incorporated herein and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights, immunities, exceptions or limitations or an increase of any of its liabilities under US COGSA. The provision cited in the COGSA (except as may be otherwise specifically provided herein) shall also govern before loading and after discharging as long as the goods remain in the Carrier's custody of control.

## 27. VARIATION OF THE CONTRACT

No servant, agent or Sub-contractor of the Carrier shall have the power to waive or vary any terms of this Bill of lading unless such waiver or variation is in writing and is specifically authorized or approved in writing by the Carrier.

## 28. NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the Carrier is not responsible by statute, contract or otherwise, the Goods and the Merchant jointly and severally shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the Goods. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving ship belonged to strangers.

The following clauses are applicable only when document used as a Sea Waybill

29. Delivery will be made to the consignee or his authorized representative upon presentation of a delivery receipt or other evidence of identity and authorization satisfactory to the Carrier in his sole and absolute discretion without the need of producing or surrendering a copy of his Sea Waybill.

30. Except as provided in this Sea Waybill, the contract of carriage evidenced by this Sea Waybill is subject to the terms and conditions of the Carrier's current Combined Transport Bill of Lading, a copy of which may be obtained from the Carrier and its agents. The Shipper accepts all said terms and conditions, including but not limited to the per package and other limitations of liability contained therein, on behalf of the Consignee and the Owner of the Goods and warrants that he has authority to do so.

31. The consignee or other receiver of the Goods, by presenting this Sea Waybill and/or requesting delivery of the Goods, undertakes all liabilities of the Shipper under this Sea Waybill and the Carrier's current Combined Transport Bill of Lading, such undertaking being additional and without prejudice to the Shipper's own liability.

32. The shipper agrees and observes the CMI Uniform Rules for Sea Waybill for the purpose of using the Carrier's Sea Waybill in cargo transportation.

33. Upon written request of the Shipper prior to arrival of the carrying vessel at the Port of Discharge or Place of Delivery, whichever applicable, the Carrier will use its best efforts to change the Sea Waybill to the Carrier's Bill of Lading, provided that the Carrier shall in no case be liable for failure timely to effect such changes.

34. The goods are subject to the Carrier's normal credit practices with respect to release of particular Goods, as specified in the Carrier's Tariff and Bill of Lading, including but not limited

to, the Carrier's right to a lien against any shipment as security for any unpaid charges due and owing to the carrier by any party to this Sea Waybill, whether related to the Goods described in this sea Waybill or not.

35.Unless instructed to the contrary by the shipper prior to the commencement of carriage and noted accordingly on the face hereof, the Carrier will, subject to the aforesaid terms and conditions, process cargo claims with the Consignee. Claims settlement, if any, shall be a complete discharge of Carrier's liabilities to the Shipper.

**(As amended on 24/08/01).**

# SERVICE CONTRACT:  SHE11328

COSCO
Essential Terms/Service Contract Tariff No.: 8
Tariff(s) of General Applicability: 8

## TERM 1-0 : ORIGIN

China
Hong Kong

## TERM 1-1 : ORIGIN SPECIFICATION

SEE TERM 6 FOR SPECIFIC PORTS

## TERM 2-0 : DESTINATION

United States

## TERM 2-1 : DESTINATION SPECIFICATION

SEE TERM 6 FOR SPECIFIC PORTS

## TERM 3-0 : COMMODITIES

Group 1:
Drivers,nos; Computer Parts,nos;photo frame,nos;digital video camera,nos

## TERM 4-0 : MINIMUM QUANTITY OR PORTION

Merchant agrees to tender to the carrier, or cause to be tendered to carrier, a minimum of certain quantity of ███████ . For purposes of counting minimum volume shipments (2) TEUs shall equal (1) FEU. In the event that vessel space or containers are not available for cargo tendered in good order, on a timely basis, and merchant is thus prevented from shipping the minimum quantity above, merchant may, at its exclusive option, require carrier either to (1) reduce the contract minimum volume by a number equal to the quantity of containers not accommodated or (2) pay merchant for every shipment not accommodated according to the following schedule. Carrier may request merchant to show evidence of shipment by other means as a condition of penalty payment.

a:      Less than ████ of contract minimum - reduction of contract minimum only.

b:      More than ████ but less than ████ of contract minimum - ████ of amount specified in term 7 of this contract.

c:      More than ███ of contract minimum - amount equal to that amount specified in term 7 of this contract.

## TERM 5-0 : SERVICE COMMITMENTS

a.      Carrier shall provide adequate and assured vessel space to carry the minimum quantity of cargo tendered per Term 4 of this contract.

b.      Carrier will provide regularly scheduled service with not less than three (3) sailings per month.

c.      Merchant and carrier will keep each other well advised concerning shipment scheduling in order to enable each other to arrange for meeting applicable requirements.

d.      Merchant and his agent will provide service contract number to carrier or carrier's agent at time of booking cargo. Shipments not so identified will not be assessed contract rates and will not count toward achieving contract minimum. In such cases the applicable tariff rate will apply.

e.      The carrier reserves the right to direct cargo to the operationally more appropriate vessel within the contract period.

f.      Carrier is not required to provide space on any specific sailing or to meet any specific delivery date. Merchant may apply for guaranteed space on one or more specific sailings by submitting a written request to carrier at least 10 days before the earliest scheduled departure of a vessel upon which guaranteed space is requested. Terms for such guaranteed space to be mutually agreed between the parties.

## TERM 6-0 : RATES OR RATE SCHEDULES

a.      Rates shall be deemed to be ███ unless otherwise specified in the contract.
Rates and charges are expressed in USD unless otherwise specified in the contract.

b.      During the life of this contract, should the applicable tariff rate be lower than the contract rate, the lower rate shall apply (after the lower rate becomes effective), and such shipments will be counted in meeting merchant's minimum volume commitment.

c.      Notwithstanding any other provision of this contract, all above rates shall be increased by the amount of (1) any new accessorial charges or surcharges published in carrier's tariff after the effective date of this contract and (2) any increases in the amounts of any accessorial charges or surcharges, and (3) the amount of any rate increases applicable to the movement of any commodity or commodities for which rates are stated in this contract, which increases are published in carrier's tariff after the effective date of this contract.

d.      Notwithstanding other provision of this Contract, including but not limited to any "no-new-surcharge" clause, Shipper shall be subject to any rule in the Governing Tariff establishing a charge relating to any of the following circumstances or charges arising or taking effect subsequent to the effective date of this Contract:

a strike, lockout, work stoppage, or other labor unrest; origin or destination port or inland congestion; security requirements or costs; taxes, fees or charges levied by any federal, state or local governmental entity, or by any port or harbor authority; increased inland transportation costs resulting from federal, state, or local legislative or regulatory action, including action by any port or harbor authority; or clean air requirements.

Any charge or surcharge relating to costs incurred in connection with newly-established security requirements (whether established by law, statute, regulation, or by a service provider carrier) applicable to or relating to any portion of the transportation and related services provided under this contract

e.      For US Outbound cargo, US inland transportation performed by COSCO for this account and on behalf of merchant or as part of a thru single factor shall be rated "Subject to equipment availability".

## TERM 6-1 : FREE TIME

_X_ Check here if you want per-diem in USA collected through your trucker, covered under our interchange agreement with the trucker. (see notes below)

__ Check here if you want per-diem in USA collected directly from shipper or consignee, covered under our tariff rules on per-diem. (see notes below). When checking this box, following information must be provided:
a.      name of person responsible for payment of per-diem charges in USA

b.      U.S. street address_____
c.      U.S. phone number_____
d.      e-mail address_____

Notes:
1)   All affiliates or members in service contract will be afforded billing of per diem according to choice indicated herein.
2)   Direct billing of per diem to shipper or consignee will be done only to companies located in USA.
3)   Any company that is located outside of USA, will have per diem billed to trucker.
4)   "To order" Bills of Ladings will have per diem billed to trucker.
5)   In the event of multiple affiliates/members in service contract, Cosco will afford centralized billing of per diem to one address. Centralized billing needs to be approved by Cosco upon submission of company's name and address. If Cosco does not approve centralized billing, then per diem will be billed to trucker.

Free time provisions as per tariff of general applicability.

## TERM 6-2 : APPENDIX A – RATES

Far East to USA, Canada

Commodity:   Group 1

| Origin | Destination | Mode | CargoNature | 20 | 40 | 40H | Notes |
|--------|-------------|------|-------------|----|----|-----|-------|
| Hong Kong, Hong Kong; Yantian, GD, China | USWC | ■ | ■ | ■ | ■ | ■ | S1 |

Note S1:   Rates are inclusive of the Destination Delivery Charge (DDC), Gulf of Aden Security Surcharge (GAS), Panama Canal Charge (PNC) and the Suez Canal Transit Charge (SUZ). Rates are not inclusive of the Bunker Adjustment Factor (BAF), Inland Fuel Charge (IFC), Origin Documentation Fee (DOC) and the Peak Season Charge (PSS) and all other surcharges, including those, if any, specified in the contract and those published in the Governing Tariff(s) at the time of shipment.

## ASSESSORIALS

**Far East to USA, Canada**
**Inland Table A**

| Location | Over | Mode | CargoNature | 20 | 40 | 40H |
|----------|------|------|-------------|----|----|-----|
| Beihai, GX, China | Hong Kong, Hong Kong | ■ | ■ | ■ | ■ | ■ |

## GEOGRAPHIC TERMS

Far East to USA, Canada
   USWC (US West Coast): Long Beach, CA; Los Angeles, CA; Oakland, CA; Seattle, WA; Tacoma, WA

## CODE DEFINITIONS

Cargo Nature Definitions
GC = General Cargo
RF = Refrigerated Cargo
DG = Dangerous (Hazardous) Cargo
AW = Awkward Cargo (Out of Gauge Cargo)
AD = Awkward Dangerous Cargo (Out of Gauge Dangerous Cargo)
RD = Refrigerated Dangerous Cargo

Container Type Definitions:
GP = General Purpose Container
FL = Flat Rack
HG = General Purpose Hanger Container
GH = High-Cube Hanger Container
HQ = High-Cube Container
OT = Open Top Container
PL = Platform
RF = Standard Refrigerated Container
RQ = High-Cube Refrigerated Container
TK = Tank Container
H1 = standard garment container fitted with Rack 1 - tier
      (hanger fittings with single tier bar equipment)
H2 = standard garment container fitted with Rack 2 - tier
      (hanger fittings with double tier bar equipment)
H3 = standard garment container fitted with Rack 3 - tier
      (hanger fittings with triple tier bar equipment)
H4 = standard garment container fitted with Rack 4 - tier
      (hanger fittings with quadruple tier bar equipment)
G1 = high cube garment container fitted with Rack 1 - tier
      (hanger fittings with single tier bar equipment)
G2 = high cube garment container fitted with Rack 2 - tier
      (hanger fittings with double tier bar equipment)
G3 = high cube garment container fitted with Rack 3 - tier
      (hanger fittings with triple tier bar equipment)
G4 = high cube garment container fitted with Rack 4 - tier
      (hanger fittings with quadruple tier bar equipment)

SOC Indicator
"Y" = Cargo moving in shipper owned containers only.
"N" = Cargo moving in carrier owned containers only.
"A" = Cargo moving in shipper owned containers or carrier owned containers. Shipper owned containers are subject to a SOC surcharge if a SOC surcharge is filed in carrier's tariffs of general applicability or in this contract.
No SOC Indicator = Cargo moving in carrier owned containers only

## TERM 7-0 : LIQUIDATED DAMAGES FOR NON-PERFORMANCE (IF ANY)

Unless otherwise excused by terms 12.100 and 12.101 of this contract, if merchant fails to ship the required minimum number of TEUs within the term of this contract, merchant shall pay carrier either (a) or (b), whichever is less:

A.      The difference between the volume actually shipped and the required minimum in the contract multiplied by the rate of

usper unit; or

B.      Carrier and merchant may mutually agree to re-rate shipments made at the then applicable tariff rates.

## TERM 8-0 : DURATION OF CONTRACT

The duration of the contract shall be as specified below. For the purpose of determining whether or not a cargo movement occurs during the term of the contract, the pertinent date shall be the date of receipt of the cargo by COSCO.

This contract shall become effective on May 1, 2011 and will expire on April 30, 2012.

## TERM 9-0 : SIGNATURE DATE, CONTRACT PARTIES, SIGNATORIES AND AFFILIATES

A.      THE LEGAL NAMES AND BUSINESS ADDRESSES OF THE CONTRACT PARTIES ARE:

    1.      COSCO CONTAINER LINES COMPANY LIMITED    ("CARRIER")
        NO.378, DONG DA MING ROAD, SHANGHAI 200080, CHINA

    2.      Lite On It Corporation                      ("MERCHANT")
        ADDRESS: 14Floor, No.392, Ruey Kuang Road,
              Neihu Taipei Taipei
              Taiwan

B.      THE LEGAL NAMES, TITLES, AND ADDRESSES OF REPRESENTATIVES SIGNING THE CONTRACT FOR THE PARTIES ARE:

    1.      FOR THE CARRIER:
        LEGAL NAME: Mr. Zhou GanFei
        TITLE: Depury General Manager of COSCO South-China International Freight Co., Ltd.
        ADDRESS:  COSCO South-China International Freight Co., Ltd.
                17/F Anlian Plaza No. 4018 Jintian Road, Futian District, Shenzhen 518026,

China

               As agent for:

               COSCO Container Lines Company Limited
               No. 378 Dong Da Ming Road,
               Shangha, China 200080

    2.      FOR THE MERCHANT:
        LEGAL NAME: Mike Wu
        TITLE:  General Manager
        ADDRESS: 14Floor, No.392, Ruey Kuang Road,
                Neihu Taipei Taipei
              Taiwan

    3.      THIS CONTRACT WAS SIGNED ON April 27, 2011.

C.      THE LEGAL NAME(S) AND BUSINESS ADDRESS(ES) OF AFFILIATES ENTITLED TO ACCESS THE CONTRACT, IF ANY, ARE:
~~Members/Affiliates Name~~

Lei (HK) Limited
Room 1610-11, 16F, CC Wu Bldg.302-8, Hennessy Road,
Hong Kong
Status:Beneficial Owner of Cargo

# TERM 10-0 : SHIPPERS STATUS CERTIFICATION AND AFFILIATES, IF ANY

A.   MERCHANT HEREBY CERTIFIES THAT IT IS (INITIAL ONE OF THE FOLLOWING):

____XX____   THE CARGO OWNER, I.E., THE BUYER, SELLER, OR BENEFICIAL OWNER OF THE CARGO

_____   A SHIPPERS' ASSOCIATION AS DEFINED IN THE SHIPPING ACT OF 1984 AS AMENDED BY THE OCEAN SHIPPING REFORM ACT OF 1998

_____   AN NVOCC WHICH HAS A PUBLISHED TARIFF AND HAS FURNISHED A BOND, PROOF OF INSURANCE, OR OTHER SURETY IN A FORM AND AMOUNT DETERMINED BY THE FEDERAL MARITIME COMMISSION.

_____   OTHER (DESCRIBE IN DETAIL: _____)

b.   Merchant further certifies that the shipper status of any affiliate(s) entitled to receive service under this contract is as indicated in Appendix B, above.

c.   If the merchant (or an affiliate of the merchant entitled to receive service under this contract) is an NVOCC, merchant hereby certifies that the NVOCC has a published tariff and proof of financial responsibility as required under section 8 and 19 of the shipping act of 1984, as amended by the ocean shipping reform act of 1998.

d.   If the merchant (or an affiliate of the merchant entitled to receive service under this contract) is a shippers' association, and if an NVOCC is a member of that shippers' association, the merchant hereby certifies that the NVOCC has a published tariff and proof of financial responsibility as required under section 8 and 19 of the shipping act of 1984, as amended by the ocean shipping reform act of 1998.

e.   If the merchant (or an affiliate of the merchant entitled to receive service under this contract) is a shippers' association, merchant hereby certifies that merchant has attached hereto a list of those members who are entitled to ship under this contract or, if no list is attached hereto, that all of the members of such association are entitled to ship under this contract.

f.   Members/Affiliates Name:

Contracts signed with cargo owner or NVO: The merchant signing this contract verifies that the affiliated companies listed in Appendix B are affiliated with merchant's company by way of mutual ownership.

Contracts signed with shipper association: The shipper association signing this contract verifies that the affiliated companies listed in Appendix B are affiliated with members' company by way of mutual ownership.


# TERM 11-0 : RECORDS

a.   The shipment records which will be maintained to support the contract are the original signed service contract, amendments, bills of lading, and correspondence and other documents that are relevant and related to the service contract.

B.   The address, title, and telephone number of the person who will respond to a request by making the original signed service contract and shipment records available to the federal maritime commission for inspection under 46 CFR 530.17 are:

Address: 100 lighting way, Secaucus, NJ 07094 U.S.A.
Title:   vice president, COSCO CONTAINER LINES AMERICAS INC.
– as agents for COSCO Container Lines Company LTD.
Telephone number:      (201) 422-0500

# TERM 12-0 : OTHER PROVISIONS OF THE CONTRACT

100.   Force majeure: either party shall be excused from the performance of its duties under this contract, if and only to the extent that, its performance is prevented by acts of god, strikes, embargoes, or events similarly beyond the knowledge or

control of either party, but not including commercial contingencies, for example changing markets, poor management decisions and business declines, etc.

In the event that carrier is prohibited by the U.S. Customs Services from unloading some or all of the cargo on a particular vessel and such prohibition is not due to any act or omission of the carrier, then such prohibition shall constitute a force majeure event that shall relieve carrier from responsibility for any and all delay, damage, injury and expense suffered or incurred as a result thereof including, but not limited to, breaches of service commitment, and/or transit time guarantees.

101.     Cancellation/termination: carrier shall have the right to cancel this contract by providing written notice of such cancellation at any time after merchant has fulfilled the minimum quantity or portion of this contract (Term 4).

102.     Credit: this contract is not effective and will not be filed with the FMC unless and until merchant provides evidence of its credit-worthiness which is satisfactory to carrier. Merchant understands that this provision does not exempt merchant from carrier's normally applicable credit practices with respect to release of individual shipments, as specified in the tariff of general applicability. Carrier reserves the right to deem this contract breached and to terminate the contract if charges under the contract are due and unpaid for more than sixty days.

103.     Tariff(s) of general applicability: unless otherwise provided in this contract, transportation provided pursuant to this contract is subject to all applicable rules, regulations, rates and charges set forth in the carrier's tariff(s) of general applicability including amendments and reissues thereto.

104.     Attorney fees: merchant agrees to pay all attorney fees and costs incurred by carrier for collecting amounts due under this contract.

105.     Indemnity and hold harmless: merchant agrees to protect, indemnify and hold carrier harmless from and against any claim, action or proceeding by a governmental entity or third party for damages, fines or penalties of any kind including all expenses, attorney fees and other costs associated therewith, arising out of merchant's breach of any provision of this contract.

106.     Arbitration: in the event of any dispute arising out of this contract, the merchant and the carrier agree to binding arbitration before the China Maritime Arbitration Association Committee (if permitted by the shipping act of 1984 as amended by the ocean shipping reform act of 1998), or, if not so permitted, at a location mutually agreed to by the parties, or, if the parties are unable to agree, then in Hong Kong.

107.     Service contract number: the service contract number of this contract shall be written on each bill of lading covering a shipment under this contract.

108.     Surety bond: carrier reserves the right to require the merchant to provide surety bond or cash deposit in the amount of up to ▮▮▮▮▮▮▮U.S. dollars to reasonably guarantee carrier can recover monies and/or penalties due under the contract. If cash deposit, monies should be deposited in bank designated by COSCO Container Lines Americas Inc. If merchant can not provide above within 15 calendar days of the carrier's request the carrier reserves the right to not file or cancel contract if already filed.

109.     Execution by agent: if the person signing this contract is not an officer or employee of the merchant or the carrier, such person warrants and represents that he or she is an authorized agent acting on behalf of the merchant or of the carrier and that he or she has the authority to enter into the contract on behalf of the merchant or the carrier. Carrier reserves the right to require the agent to provide carrier with evidence of such authority satisfactory to carrier.

110. Request: to be initiated by merchant and/or carrier.

111. Assignment: merchant may not assign this contract to any person.

112.     Shipments of waste/scrap material: For shipments to China, shipper and consignee warrant that they hold valid AQSIQ registrations and CCIC certificates for all containers on the bill of lading. In Accordance with Clause 12 of the terms and conditions of Cosco Container Line bill of lading, Shipper and Consignee undertake to hold harmless and indemnify Carrier from any costs and expenses that may arise if any cargo and/or container(s) is/are not allowed entry into China for non

compliance with the above or other regulations.



LITE-ON IT CORPORATION
14th FL, 392 Ruey Kuang Road,
Neihu, Taipei 114,
Taiwan, R.O.C.
Tel:886 2 87982996 Fax:886 287982833

September 14, 2009

Mr. Zhu Tao
Deputy General Manager of America Trade Division
**COSCO Container Lines Company Limited**
No.378 Dong Da Ming Road
Shanghai 200080, China

### Re: Contract (No. SHE08429) termination notice

Dear Mr. Tao,

As the committed quantities of the contract (No.SHE08429, which signed by the parties in 2008) is almost ran out; therefore, please be noted that the contract shall be terminated immediately (from the date of September 14, 2009).

Best Regard,

GINA LIN
Manager
Logistics Department
Lite-On IT Corporation

Confidential