# EXHIBIT 25

# SERVICE CONTRACT: SHE11328

COSCO
Essential Terms/Service Contract Tariff No.: 8
Tariff(s) of General Applicability: 8

## TERM 1-0 : ORIGIN

China
Hong Kong

## TERM 1-1 : ORIGIN SPECIFICATION

SEE TERM 6 FOR SPECIFIC PORTS

## TERM 2-0 : DESTINATION

United States

## TERM 2-1 : DESTINATION SPECIFICATION

SEE TERM 6 FOR SPECIFIC PORTS

## TERM 3-0 : COMMODITIES

Group 1:
Drivers,nos; Computer Parts,nos;photo frame,nos;digital video camera,nos

### TERM 4-0 : MINIMUM QUANTITY OR PORTION

Merchant agrees to tender to the carrier, or cause to be tendered to carrier, a minimum of certain quantity of ▬▬▬. For purposes of counting minimum volume shipments (2) TEUs shall equal (1) FEU. In the event that vessel space or containers are not available for cargo tendered in good order, on a timely basis, and merchant is thus prevented from shipping the minimum quantity above, merchant may, at its exclusive option, require carrier either to (1) reduce the contract minimum volume by a number equal to the quantity of containers not accommodated or (2) pay merchant for every shipment not accommodated according to the following schedule. Carrier may request merchant to show evidence of shipment by other means as a condition of penalty payment.

a: Less than ▬▬ of contract minimum - reduction of contract minimum only.

b: More than ▬▬ but less than ▬▬ of contract minimum - ▬▬ of amount specified in term 7 of this contract.

c:  More than ▓ of contract minimum - amount equal to that amount specified in term 7 of this contract.

## TERM 5-0 : SERVICE COMMITMENTS

a.  Carrier shall provide adequate and assured vessel space to carry the minimum quantity of cargo tendered per Term 4 of this contract.

b.  Carrier will provide regularly scheduled service with not less than three (3) sailings per month.

c.  Merchant and carrier will keep each other well advised concerning shipment scheduling in order to enable each other to arrange for meeting applicable requirements.

d.  Merchant and his agent will provide service contract number to carrier or carrier's agent at time of booking cargo. Shipments not so identified will not be assessed contract rates and will not count toward achieving contract minimum. In such cases the applicable tariff rate will apply.

e.  The carrier reserves the right to direct cargo to the operationally more appropriate vessel within the contract period.

f.  Carrier is not required to provide space on any specific sailing or to meet any specific delivery date. Merchant may apply for guaranteed space on one or more specific sailings by submitting a written request to carrier at least 10 days before the earliest scheduled departure of a vessel upon which guaranteed space is requested. Terms for such guaranteed space to be mutually agreed between the parties.

## TERM 6-0 : RATES OR RATE SCHEDULES

a.  Rates shall be deemed to be ▓ unless otherwise specified in the contract.
Rates and charges are expressed in USD unless otherwise specified in the contract.

b.  During the life of this contract, should the applicable tariff rate be lower than the contract rate, the lower rate shall apply (after the lower rate becomes effective), and such shipments will be counted in meeting merchant's minimum volume commitment.

c.  Notwithstanding any other provision of this contract, all above rates shall be increased by the amount of (1) any new accessorial charges or surcharges published in carrier's tariff after the effective date of this contract and (2) any increases in the amounts of any accessorial charges or surcharges, and (3) the amount of any rate increases applicable to the movement of any commodity or commodities for which rates are stated in this contract, which increases are published in carrier's tariff after the effective date of this contract.

d.  Notwithstanding other provision of this Contract, including but not limited to any "no-new-surcharge" clause, Shipper shall be subject to any rule in the Governing Tariff establishing a charge relating to any of the following circumstances or charges arising or taking effect subsequent to the effective date of this Contract:

a strike, lockout, work stoppage, or other labor unrest; origin or destination port or inland congestion; security requirements or costs; taxes, fees or charges levied by any federal, state or local governmental entity, or by any port or harbor authority; increased inland transportation costs resulting from federal, state, or local legislative or regulatory action, including action by any port or harbor authority; or clean air requirements.

Any charge or surcharge relating to costs incurred in connection with newly-established security requirements (whether established by law, statute, regulation, or by a service provider carrier) applicable to or relating to any portion of the transportation and related services provided under this contract

e.  For US Outbound cargo, US inland transportation performed by COSCO for this account and on behalf of merchant or as part of a thru single factor shall be rated "Subject to equipment availability".

## TERM 6-1 : FREE TIME

_X_ Check here if you want per-diem in USA collected through your trucker, covered under our interchange agreement with the trucker. (see notes below)

___ Check here if you want per-diem in USA collected directly from shipper or consignee, covered under our tariff rules on per-diem. (see notes below). When checking this box, following information must be provided:
a.     name of person responsible for payment of per-diem charges in USA

b.     U.S. street address _____
c.     U.S. phone number _____
d.     e-mail address _____

Notes:
1) All affiliates or members in service contract will be afforded billing of per diem according to choice indicated herein.
2) Direct billing of per diem to shipper or consignee will be done only to companies located in USA.
3) Any company that is located outside of USA, will have per diem billed to trucker.
4) "To order" Bills of Ladings will have per diem billed to trucker.
5) In the event of multiple affiliates/members in service contract, Cosco will afford centralized billing of per diem to one address. Centralized billing needs to be approved by Cosco upon submission of company's name and address. If Cosco does not approve centralized billing, then per diem will be billed to trucker.

Free time provisions as per tariff of general applicability.

## TERM 6-2 : APPENDIX A - RATES

Far East to USA, Canada

Commodity:   Group 1

| Origin | Destination | Mode | CargoNature | 20 | 40 | 40H | Notes |
|---|---|---|---|---|---|---|---|
| Hong Kong, Hong Kong; Yantian, GD, China | USWC | ■ | ■ | ■ | ■ | ■ | S1 |

Note S1: Rates are inclusive of the Destination Delivery Charge (DDC), Gulf of Aden Security Surcharge (GAS), Panama Canal Charge (PNC) and the Suez Canal Transit Charge (SUZ). Rates are not inclusive of the Bunker Adjustment Factor (BAF), Inland Fuel Charge (IFC), Origin Documentation Fee (DOC) and the Peak Season Charge (PSS) and all other surcharges, including those, if any, specified in the contract and those published in the Governing Tariff(s) at the time of shipment.

### ASSESSORIALS

**Far East to USA, Canada**
**Inland Table A**

| Location | Over | Mode | CargoNature | 20 | 40 | 40H |
|---|---|---|---|---|---|---|
| Beihai, GX, China | Hong Kong, Hong Kong | ■ | ■ | ■ | ■ | ■ |

**GEOGRAPHIC TERMS**

Far East to USA, Canada
  USWC (US West Coast): Long Beach, CA; Los Angeles, CA; Oakland, CA; Seattle, WA; Tacoma, WA

**CODE DEFINITIONS**

Cargo Nature Definitions
GC = General Cargo
RF = Refrigerated Cargo
DG = Dangerous (Hazardous) Cargo
AW = Awkward Cargo (Out of Gauge Cargo)
AD = Awkward Dangerous Cargo (Out of Gauge Dangerous Cargo)
RD = Refrigerated Dangerous Cargo

Container Type Definitions:
GP = General Purpose Container
FL = Flat Rack
HG = General Purpose Hanger Container
GH = High-Cube Hanger Container
HQ = High-Cube Container
OT = Open Top Container
PL = Platform
RF = Standard Refrigerated Container
RQ = High-Cube Refrigerated Container
TK = Tank Container
H1 = standard garment container fitted with Rack 1 - tier
    (hanger fittings with single tier bar equipment)
H2 = standard garment container fitted with Rack 2 - tier
    (hanger fittings with double tier bar equipment)
H3 = standard garment container fitted with Rack 3 - tier
    (hanger fittings with triple tier bar equipment)
H4 = standard garment container fitted with Rack 4 - tier
    (hanger fittings with quadruple tier bar equipment)
G1 = high cube garment container fitted with Rack 1 - tier
    (hanger fittings with single tier bar equipment)
G2 = high cube garment container fitted with Rack 2 - tier
    (hanger fittings with double tier bar equipment)
G3 = high cube garment container fitted with Rack 3 - tier
    (hanger fittings with triple tier bar equipment)
G4 = high cube garment container fitted with Rack 4 - tier
    (hanger fittings with quadruple tier bar equipment)

SOC Indicator
"Y" = Cargo moving in shipper owned containers only.
"N" = Cargo moving in carrier owned containers only.
"A" = Cargo moving in shipper owned containers or carrier owned containers. Shipper owned containers are subject to a SOC surcharge if a SOC surcharge is filed in carrier's tariffs of general applicability or in this contract.
No SOC Indicator = Cargo moving in carrier owned containers only.

## TERM 7-0 : LIQUIDATED DAMAGES FOR NON-PERFORMANCE (IF ANY)

Unless otherwise excused by terms 12.100 and 12.101 of this contract, if merchant fails to ship the required minimum number of TEUs within the term of this contract, merchant shall pay carrier either (a) or (b), whichever is less:

A.     The difference between the volume actually shipped and the required minimum in the contract multiplied by the rate of

usd per unit; or

B.    Carrier and merchant may mutually agree to re-rate shipments made at the then applicable tariff rates.

## TERM 8-0 : DURATION OF CONTRACT

The duration of the contract shall be as specified below. For the purpose of determining whether or not a cargo movement occurs during the term of the contract, the pertinent date shall be the date of receipt of the cargo by COSCO.

This contract shall become effective on May 1, 2011 and will expire on April 30, 2012.

## TERM 9-0 : SIGNATURE DATE, CONTRACT PARTIES, SIGNATORIES AND AFFILIATES

    A.   THE LEGAL NAMES AND BUSINESS ADDRESSES OF THE CONTRACT PARTIES ARE:

        1.   COSCO CONTAINER LINES COMPANY LIMITED    ("CARRIER")
            NO.378, DONG DA MING ROAD, SHANGHAI 200080, CHINA

        2.   Lite On It Corporation                          ("MERCHANT")
            ADDRESS: 14Floor, No.392, Ruey Kuang Road,
                Neihu Taipei Taipei
                Taiwan

    B.   THE LEGAL NAMES, TITLES, AND ADDRESSES OF REPRESENTATIVES SIGNING THE CONTRACT FOR THE PARTIES ARE:

        1.   FOR THE CARRIER:
            LEGAL NAME: Mr. Zhou GanFei
            TITLE: Depurv General Manager of COSCO South-China International Freight Co., Ltd.
            ADDRESS: COSCO South-China International Freight Co., Ltd.
                17/F Anlian Plaza No. 4018 Jintian Road, Futian District, Shenzhen 518026, China

            As agent for:

            COSCO Container Lines Company Limited
            No. 378 Dong Da Ming Road,
            Shangha, China 200080

        2.   FOR THE MERCHANT:
            LEGAL NAME: Mike Wu
            TITLE: General Manager
            ADDRESS: 14Floor, No.392, Ruey Kuang Road,
                Neihu Taipei Taipei
                Taiwan

        3.   THIS CONTRACT WAS SIGNED ON April 27, 2011.

    C.   THE LEGAL NAME(S) AND BUSINESS ADDRESS(ES) OF AFFILIATES ENTITLED TO ACCESS THE CONTRACT, IF ANY, ARE:
        Members/Affiliates Name

Let (HK) Limited
Room 1610-11, 16F, CC Wu Bldg.302-8, Hennessy Road,
Hong Kong
Status:Beneficial Owner of Cargo

# TERM 10-0 : SHIPPERS STATUS CERTIFICATION AND AFFILIATES, IF ANY

A. MERCHANT HEREBY CERTIFIES THAT IT IS (INITIAL ONE OF THE FOLLOWING):

\_\_\_XX\_\_\_ THE CARGO OWNER, I.E., THE BUYER, SELLER, OR BENEFICIAL OWNER OF THE CARGO

_____ A SHIPPERS' ASSOCIATION AS DEFINED IN THE SHIPPING ACT OF 1984 AS AMENDED BY THE OCEAN SHIPPING REFORM ACT OF 1998

_____ AN NVOCC WHICH HAS A PUBLISHED TARIFF AND HAS FURNISHED A BOND, PROOF OF INSURANCE, OR OTHER SURETY IN A FORM AND AMOUNT DETERMINED BY THE FEDERAL MARITIME COMMISSION.

_____ OTHER (DESCRIBE IN DETAIL: _____)

b.      Merchant further certifies that the shipper status of any affiliate(s) entitled to receive service under this contract is as indicated in Appendix B, above.

c.      If the merchant (or an affiliate of the merchant entitled to receive service under this contract) is an NVOCC, merchant hereby certifies that the NVOCC has a published tariff and proof of financial responsibility as required under section 8 and 19 of the shipping act of 1984, as amended by the ocean shipping reform act of 1998.

d.      If the merchant (or an affiliate of the merchant entitled to receive service under this contract) is a shippers' association, and if an NVOCC is a member of that shippers' association, the merchant hereby certifies that the NVOCC has a published tariff and proof of financial responsibility as required under section 8 and 19 of the shipping act of 1984, as amended by the ocean shipping reform act of 1998.

e.      If the merchant (or an affiliate of the merchant entitled to receive service under this contract) is a shippers' association, merchant hereby certifies that merchant has attached hereto a list of those members who are entitled to ship under this contract or, if no list is attached hereto, that all of the members of such association are entitled to ship under this contract.

f.      Members/Affiliates Name:

Contracts signed with cargo owner or NVO: The merchant signing this contract verifies that the affiliated companies listed in Appendix B are affiliated with merchant's company by way of mutual ownership.

Contracts signed with shipper association: The shipper association signing this contract verifies that the affiliated companies listed in Appendix B are affiliated with members' company by way of mutual ownership.

## TERM 11-0 : RECORDS

a.      The shipment records which will be maintained to support the contract are the original signed service contract, amendments, bills of lading, and correspondence and other documents that are relevant and related to the service contract.

B.      The address, title, and telephone number of the person who will respond to a request by making the original signed service contract and shipment records available to the federal maritime commission for inspection under 46 CFR 530.17 are:

Address: 100 lighting way, Secaucus, NJ 07094 U.S.A.
Title:    vice president, COSCO CONTAINER LINES AMERICAS INC.
– as agents for COSCO Container Lines Company LTD.
Telephone number:     (201) 422-0500

## TERM 12-0 : OTHER PROVISIONS OF THE CONTRACT

100.    Force majeure: either party shall be excused from the performance of its duties under this contract, if and only to the extent that, its performance is prevented by acts of god, strikes, embargoes, or events similarly beyond the knowledge or

control of either party, but not including commercial contingencies, for example changing markets, poor management decisions and business declines, etc.

In the event that carrier is prohibited by the U.S. Customs Services from unloading some or all of the cargo on a particular vessel and such prohibition is not due to any act or omission of the carrier, then such prohibition shall constitute a force majeure event that shall relieve carrier from responsibility for any and all delay, damage, injury and expense suffered or incurred as a result thereof including, but not limited to, breaches of service commitment, and/or transit time guarantees.

101. Cancellation/termination: carrier shall have the right to cancel this contract by providing written notice of such cancellation at any time after merchant has fulfilled the minimum quantity or portion of this contract (Term 4).

102. Credit: this contract is not effective and will not be filed with the FMC unless and until merchant provides evidence of its credit-worthiness which is satisfactory to carrier. Merchant understands that this provision does not exempt merchant from carrier's normally applicable credit practices with respect to release of individual shipments, as specified in the tariff of general applicability. Carrier reserves the right to deem this contract breached and to terminate the contract if charges under the contract are due and unpaid for more than sixty days.

103. Tariff(s) of general applicability: unless otherwise provided in this contract, transportation provided pursuant to this contract is subject to all applicable rules, regulations, rates and charges set forth in the carrier's tariff(s) of general applicability including amendments and reissues thereto.

104. Attorney fees: merchant agrees to pay all attorney fees and costs incurred by carrier for collecting amounts due under this contract.

105. Indemnity and hold harmless: merchant agrees to protect, indemnify and hold carrier harmless from and against any claim, action or proceeding by a governmental entity or third party for damages, fines or penalties of any kind including all expenses, attorney fees and other costs associated therewith, arising out of merchant's breach of any provision of this contract.

106. Arbitration: in the event of any dispute arising out of this contract, the merchant and the carrier agree to binding arbitration before the China Maritime Arbitration Association Committee (if permitted by the shipping act of 1984 as amended by the ocean shipping reform act of 1998), or, if not so permitted, at a location mutually agreed to by the parties, or, if the parties are unable to agree, then in Hong Kong.

107. Service contract number: the service contract number of this contract shall be written on each bill of lading covering a shipment under this contract.

108. Surety bond: carrier reserves the right to require the merchant to provide surety bond or cash deposit in the amount of up to ███████ U.S. dollars to reasonably guarantee carrier can recover monies and/or penalties due under the contract. If cash deposit, monies should be deposited in bank designated by COSCO Container Lines Americas Inc. If merchant can not provide above within 15 calendar days of the carrier's request the carrier reserves the right to not file or cancel contract if already filed.

109. Execution by agent: if the person signing this contract is not an officer or employee of the merchant or the carrier, such person warrants and represents that he or she is an authorized agent acting on behalf of the merchant or of the carrier and that he or she has the authority to enter into the contract on behalf of the merchant or the carrier. Carrier reserves the right to require the agent to provide carrier with evidence of such authority satisfactory to carrier.

110. Request: to be initiated by merchant and/or carrier.

111. Assignment: merchant may not assign this contract to any person.

112. Shipments of waste/scrap material: For shipments to China, shipper and consignee warrant that they hold valid AQSIQ registrations and CCIC certificates for all containers on the bill of lading. In Accordance with Clause 12 of the terms and conditions of Cosco Container Line bill of lading, Shipper and Consignee undertake to hold harmless and indemnify Carrier from any costs and expenses that may arise if any cargo and/or container(s) is/are not allowed entry into China for non

compliance with the above or other regulations.



LITE-ON IT CORPORATION
14th FL, 392 Ruey Kuang Road,
Neihu, Taipei 114,
Taiwan, R.O.C.
Tel:886 2 87982996 Fax:886 287982833

September 14, 2009

Mr. Zhu Tao
Deputy General Manager of America Trade Division
**COSCO Container Lines Company Limited**
No.378 Dong Da Ming Road
Shanghai 200080, China

### Re: Contract (No. SHE08429) termination notice

Dear Mr. Tao,

As the committed quantities of the contract (No.SHE08429, which signed by the parties in 2008) is almost ran out; therefore, please be noted that the contract shall be terminated immediately (from the date of September 14, 2009).

Best Regard,

GINA LIN
Manager
Logistics Department
Lite-On IT Corporation

Confidential